UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NobelBiz, Inc.,

   Plaintiff,

 v.

LiveVox, Inc.,

   Defendant.

Case No.  13-cv-1773-YGR

NobelBiz, Inc.,

   Plaintiff,

 v.

Five9, Inc.,

   Defendant.

Case No.  13-cv-1846-YGR

**Order Construing Claim Terms In Dispute**

Plaintiff NobelBiz, Inc. ("NobelBiz") brings this patent infringement action against Defendants LiveVox, Inc. ("LiveVox") and Five9, Inc. ("Five9"), alleging that LiveVox is infringing United States Patent No. 8,135,122 ("the'122 patent"), entitled "System and Method for Modifying Communication Information (MCI)," and United States Patent No. 8,565,399 ("the '399 patent"), also entitled "System and Method for Modifying Communication Information (MCI)." Now before the Court is the parties' claim construction dispute.[1] On August 22, 2014,

---

[1] Cases numbered 13-cv-01773 (*NobelBiz v. LiveVox*) and 13-cv-01846 (*NobelBiz v.*

the Court held a claim construction hearing to consider the disputed terms.

Having carefully considered the papers submitted, the parties' arguments presented at hearing, and the pleadings in this action, and for the reasons set forth below, the Court hereby adopts the constructions set forth herein.

## I.   GENERAL BACKGROUND

NobelBiz alleges that LiveVox has infringed two of its patents:  the '122 patent and the '399 patent.  The '122 patent was issued on March 13, 2012 to NobelBiz.  The '399 patent, which issued on October 22, 2013, has the same title, inventor, specification, and priority date as the '122 patent.  Generally, these patents disclose a system "to modify a communication from an Originator to provide a callback number or other contact information to the Target that may be closer to or local to the Target, in order to reduce or eliminate the payment of long distance toll charges in the event the Target dials the callback number." ('122 pat., col. 1:43–48.)

## II.   LEGAL PRINCIPLES

Claim construction is a matter of law.  *Markman v. Westview Instr., Inc.*, 517 U.S. 370, 372, 116 S. Ct. 1384 (1996).  Words in a patent claim generally are given the "ordinary and customary meaning" that they would have to a person of ordinary skill in the art.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.  Thus, in determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history.  *Id.* at 1313; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  "The appropriate starting point . . . is always with the language of the asserted claim itself."  *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998); *see also Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997).

Although claims speak to those skilled in the art, claim terms are construed in light of their

*Five9*) are related cases and this Order addresses claim construction relevant to both cases. Docket references herein shall refer to Case No. 13-cv-01773 YGR.

United States District Court
Northern District of California

1   ordinary and accustomed meaning, unless examination of the specification, prosecution history,

2   and other claims indicates that the inventor intended otherwise.  *See Electro Medical Systems, S.A.*

3   *v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).  "[T]he specification is always

4   highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best

5   guide to the meaning of a disputed term."  *Phillips*, 415 F.3d at 1315 (internal quotation marks

6   omitted).  "[T]he specification may reveal a special definition given to a claim term by the

7   patentee that differs from the meaning it would otherwise possess.  In such cases, the inventor's

8   lexicography governs."  *Id.* at 1316 (citation omitted).

9   While claims are interpreted in light of the specification, this "does not mean that

10  everything expressed in the specification must be read into all the claims."  *Raytheon Co. v. Roper*

11  *Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983).  For instance, limitations from a preferred embodiment

12  described in the specification generally should not be read into the claim language.  *See Comark*,

13  156 F.3d at 1186; *see also Decisioning.com, Inc. v. Federated Dep't Stores, Inc.*, 527 F.3d 1300,

14  1314 (Fed. Cir. 2008) ("[The] description of a preferred embodiment, in the absence of a clear

15  intention to limit claim scope, is an insufficient basis on which to narrow the claims.");

16  *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1345–46 (Fed. Cir. 2008)

17  (refusing to limit claim language to the disclosed embodiment in the absence of indication that the

18  inventor meant to limit the claim language).  However, it is a fundamental rule that "claims must

19  be construed so as to be consistent with the specification."  *Phillips*, 415 F.3d at 1316.

20  "In addition to consulting the specification, we have held that a court should also consider

21  the patent's prosecution history, if it is in evidence."  *Phillips*, 415 F.3d at 1317 (internal quotation

22  marks omitted).  "[B]ecause the prosecution history represents an ongoing negotiation between the

23  PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of

24  the specification and thus is less useful for claim construction purposes."  *Id.*  Extrinsic evidence

25  may also "be useful to the court, but it is unlikely to result in a reliable interpretation of patent

26  claim scope unless considered in the context of the intrinsic evidence."  *Id.* at 1319.

27  In most situations, analysis of this intrinsic evidence alone will resolve claim construction

28  disputes.  *See Vitronics*, 90 F.3d at 1583.  Courts should not rely on extrinsic evidence in claim

1  construction to contradict the meaning of claims discernable from examination of the claims, the

2  written description, and the prosecution history.  *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*,

3  182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).  However, it is entirely

4  appropriate "for a court to consult trustworthy extrinsic evidence to ensure that the claim

5  construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly

6  apposite, and widely held understandings in the pertinent technical field."  *Pitney Bowes*, 182

7  F.3d at 1309.  Extrinsic evidence "consists of all evidence external to the patent and prosecution

8  history, including expert and inventor testimony, dictionaries, and learned treatises."  *Phillips*, 415

9  F.3d at 1317.  All extrinsic evidence should be evaluated in light of the intrinsic evidence.  *Id.* at

10  1319.

11      The Federal Circuit has held that a "determination that a claim term 'needs no

12  construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more

13  than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the

14  parties' dispute."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361

15  (Fed. Cir. 2008).  Therefore, the Court will follow the Federal Circuit's guidance that claim

16  construction "is not an obligatory exercise in redundancy" but rather "is a matter of resolution of

17  disputed meanings and technical scope, to clarify and when necessary to explain what the patentee

18  covered by the claims, for use in the determination of infringement."  *Id.* at 1362 (citing *U.S.

19  Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)).

20      Finally, the two patents-in-suit in this case share a specification and their shared claim

21  terms should be construed consistently.  *See In re Rambus, Inc.*, 694 F.3d 42, 48 (Fed. Cir. 2012).

22  **III.    THE PERSON OF ORDINARY SKILL IN THE ART**

23      Claims are construed as they would be understood by a "person of ordinary skill

24  in the art" ("POSITA") at the time of the invention.  *Phillips*, 415 F.3d at 1313; *Innova/Pure

25  Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).  The

26  POSITA "is deemed to read the claim term not only in the context of the particular claim in which

27  the disputed term appears, but in the context of the entire patent, including the specification."

28  *Phillips*, 415 F.3d at 1313.  NobelBiz maintains that a POITSA would have a bachelor's degree

United States District Court
Northern District of California

4

and at least two years' experience in the telecommunications field and familiarity with call center telephone operations.  Finding no opposition to this definition from defendants, having examined the patents-in-suit, the Court **ADOPTS** this definition.

## IV.    STIPULATED CONSTRUCTION OF CERTAIN TERMS

The parties have stipulated that the term "embedded" shall be construed as "incorporated within."  (Dkt. No. 122 at 15:12–14.)  The parties have also agreed that the term "database" shall be construed as "a set of data stored in memory and organized for access," and that the claim term "a trigger" shall be construed as "a predetermined communication which activates further processing."  (Dkt. No. 110 at 4:21–28.)

Having considered the parties' stipulation, the Court **ADOPTS** the parties' agreed constructions.

## V.    CLAIM CONSTRUCTION OF DISPUTED TERMS

The four disputed terms and phrases present in claims 1, 6, 8, 11, 12, 16, 18, 20, and 21 of the '122 patent; and claims 1, 7, 9, 12, 13, 17, 18, 20, 22, 23, and 27 of the '399 patent.  The Court now turns to the task of determining whether these terms are in need of construction, and if so, providing the construction.[2]

---

[2] Although the Court offers the following constructions, the Court remains able to revise these constructions as its understanding of the technology changes.  Specifically, the Court "may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) (quoting *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002)); *see also Pressure Products Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315–16 (Fed. Cir. 2010) (affirming district court's revisiting of previous claim construction during trial).

United States District Court
Northern District of California

### A.  "Geographic Region"

| TERM | Plaintiff | Defendants |
|---|---|---|
| **Geographic region** | An area bounded by one or more area codes selected to reduce or eliminate the payment of long distance toll charges in the event that the call target dials the callback number. | Indefinite |

#### 1.  Language of the Patents

The Court begins with the language of the claims.  The phrase "geographic region" presents in Claims 6, 8, 11, 12, 16, 18, 20, 21 of the '122 patent and Claims 7, 9, 12, 13, 17, 18, 20, 22, 23, 27 of the '399 patent.

Claim 6 in the '122 patent claims:

> 6. A computer for processing a call originated by a call originator to a call target, the computer comprising[3]:
>
> [. . .]
>
> code for modifying caller identification data of the call originator to the selected replacement telephone number, the selected replacement telephone number having an area code from a ***geographic region*** the same as a ***geographic region*** of an area code of the telephone number of the call target

('122 pat., col. 5:35–36; 47–52 (emphases supplied).)  Dependent claims 8, 11, and 12 further claim:

> 8.  The computer of claim 6, wherein the ***geographic region*** is one of a state and other municipality smaller than a state.
>
> [. . .]

---

[3] Under Federal Circuit law, the term "comprising" is an "open" transition phrase and its scope may cover devices that employ additional, unrecited elements.  *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1244–45 (Fed. Cir. 2001) (citing *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986)).

11.   The computer of claim 6, wherein the area code and prefix of the selected replacement telephone number corresponds to a **_geographic region_** the same as the area code and prefix of the telephone number of the call target.

12.   The computer of claim 11, wherein the **_geographic region_** is one of a state and other municipality smaller than a state.

(*Id.* at col. 5:58–59; 6:5–12 (emphases supplied).)  Claim 16 in the '122 patent then claims "a computer implemented method for processing a call originated by a call originator to a call target comprising:"

modifying caller identification data of the call originator to the selected replacement telephone number, the selected replacement telephone number having an area code from a **_geographic region_** the same as a **_geographic region_** of an area code of the telephone number of the call target

(*Id.* at col. 6:21–22; 30–35 (emphases supplied).)  Dependent claims 18, 20, and 21 further claim:

18.   The method of claim 16, wherein the **_geographic region_** is one of a state and other municipality smaller than a state.

[. . .]

20.   The method of claim 16, wherein the area code and prefix of the selected replacement telephone number corresponds to a **_geographic region_** the same as an area code and a prefix of the telephone number of the call target.

21.   The method of claim 20, wherein the **_geographic region_** is one of a state and other municipality smaller than a state.

(*Id.* at col. 6:41–42; 47–52.)

The term presents similarly in the '399 patent.  Claim 7 and dependent claims 9, 12, 13, and 17 of the '399 patent claims as follows:

7.   A computer for handling an outbound call from a call originator to a call target, the computer comprising:

[. . .]

code for selecting from the database a telephone number from the plurality of outgoing telephone numbers based on at

least a portion of the telephone number of the call target, the selected telephone number having an area code from a **_geographic region_** the same as a **_geographic region_** of an area code of the telephone number of the call target

[. . .]

9.  The computer of claim 7, wherein the **_geographic region_** is one of a state and other municipality smaller than a state.

[. . .]

12.  The computer of claim 7, wherein the area code and prefix of the selected telephone number corresponds to a **_geographic region_** the same as the area code and prefix of the telephone number of the call target.

13.  The computer of claim 12, wherein the **_geographic region_** is one of a state and other municipality smaller than a state.

[. . .]

17.  The computer of claim 7, wherein the area code of the selected telephone number is of a **_geographic region_** different than a **_geographic region_** of the call originator.

('399 pat., col. 5:40–41; 52–58; 66–67; 6:8–14; 24–26 (emphases supplied).)  In

similar fashion, Claim 18 and dependent claims 20, 22, 21 and 27 claim as follows:

18. A computer implemented method for handling an outbound call from a call originator to a call target comprising:

[. . .]

selecting from the database a telephone number from the plurality of outgoing telephone numbers based on at least a portion of the telephone number of the call target, the selected telephone number having an area code from a **_geographic region_** the same as a **_geographic region_** of an area code of the telephone number of the call target;

[. . .]

20.  The computer implemented method of claim 18, wherein the **_geographic region_** is one of a state and other municipality smaller than a state.

[. . .]

22.   The computer implemented method of claim 18, wherein the area code and prefix of the selected telephone number corresponds to a ***geographic region*** the same as the area code and prefix of the telephone number of the call target.

23.   The computer implemented method of claim 22, wherein the ***geographic region*** is one of a state and other municipality smaller than a state.

[. . .]

27.   The computer implemented method of claim 18, wherein the area code of the selected telephone number is of a ***geographic region*** different than a ***geographic region*** of the call originator.

('399 pat., col. 6:27–28; 34–39; 48–50; 55–61; 7:4–7 (emphases supplied).)

### 2.   The Parties' Constructions

Defendants maintain that the phrase "geographic region" is inherently indefinite.  (Dkt. No. 111 at 19–24.)  Relying on the Supreme Court's recent ruling in *Nautilus v. Biosig Instruments*, 134 S. Ct. 2120 (2014), defendants argue that the "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  (Dkt. No. 111 at 19.) Defendants argue that the phrase is facially indefinite because the use of the phrase in the patents shows it to be indefinite.  First, Defendants contend that the phrase "geographic region" is itself nowhere defined expressly and offer that the literal term "region" means an "indefinite and unbounded area of the world."  (Dkt. No. 111 at 20.)  Second, defendants argue that throughout the patents, the phrase "geographic region" appears several times in ways that demonstrate potentially varying and relative usages.  For example, claims 6 and 16 of the '122 patent, and claims 7 and 18 of the '399 patent, require that the selected replacement telephone number has an area code from a "geographic region" that is the same as the "geographic region" of the area code of the telephone number of the call target.  ('122 pat., col. 5:47–52; 6:30–35; '399 pat., col. 5:52–58; 6:34–39.)  Defendants thus maintain that a straightforward reading of these claims allows two potential interpretations for the term "geographic region"—one where the regions are necessarily

9

coextensive, and one where they may differ.  Defendants maintain that the claims provide no indication as to which interpretation is proper and therefore is not sufficiently definite.

Third, Defendants argue that dependent claims using the term demonstrate that the term "geographic region" admits of no appreciable limit as used initially.  Specifically, '122 Patent Claims 8 and 12 (depending from Claim 6) and Claims 18 and 21 (depending from Claim 16) are dependent claims that further limit "geographic region" to one of a state or other municipality smaller than a state.  ('122 pat., col. 5:58–59; 6:9–11; 41–42; 51–52).  Thus, defendants argue that a person of ordinary skill in the art would understand this means that the same "geographic region" referenced in the preceding claim must encompass something broader than a state or a municipality of a state.  (Dkt. No. 111 at 21.)  The definitional problem only deepens upon evaluation of Claim 9 (which depends from Claim 6), which provides that the selected replacement telephone number and the call target telephone number have area codes in the same geographic region and in *different* states.  ('122 pat., col. 6:60–63 (emphasis supplied)).  The same issues are present in the '399 patent.  (*See* '399 pat., cl. 7, 9, 12, 13, 17, 18, 20, 22, 23, 27.)

Defendants contend the term lacks definition in both independent and dependent usages arguably affirms the ambiguity (the region can be delimited to a state or of a municipality smaller than a state, or, can itself cross state borders).  Without a clear definitional anchor of the term at the outset, subsequent usages of this term merely obfuscate.  The net result is that the term "geographic region," as used in the asserted patents, refers to an unbounded area.  The patents' lack guidance as to any demarcation of the geographic region (*i.e.*, what the outer boundaries of a geographic region are) render it indefinite.

NobelBiz has adopted formally the construction of the term "geographic region" accepted by the court in the Eastern District of Texas.  (Dkt. No. 121 at 1 (citing *NobelBiz, Inc. v. Global Connect, L.L.C.*, No. 6:12-cv-244 MHS,  2013 U.S. Dist. LEXIS 176339, at *26-30 (E.D. Tex. Dec. 13, 2013); Dkt. No. 121, Ex. A, pp. 8–9).)  NobelBiz further adopts the reasoning offered by the Eastern District of Texas Court vis-à-vis how its construction of the term "geographic region" as sufficiently definite comports with the Supreme Court's recent holding in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014).  The court found the term definite because "the

1    intrinsic evidence informs, with reasonable certainty, those skilled in the art about the scope of the

2    term 'geographic region.' Specifically, a person of ordinary skill in the art would understand the

3    term 'geographic region'—in light of the purpose of the invention and the purpose of the

4    limitation—to mean 'an area bounded by one or more area codes selected to reduce or eliminate

5    the payment of long distance toll charges in the event the call target dials the callback number.'

6    *See, e.g.*, '399 Patent at 1:43–49." (Dkt. No. 121, Ex. A, pp. 8–9.)

7           Separately, NobelBiz argues that defendants' invalidity contentions did not follow the

8    form required in the Patent Local Rules of this district, and therefore that its indefiniteness

9    argument is waived.  (Dkt. No. 110, Exs. B; C.)  Defendants' invalidity contention concerning

10   indefiniteness consisted of the following:

12                  The Asserted Claims are additionally invalid under 35 U.S.C.
                    § 112(2) because the following claim terms are indefinite: the
13                  selected replacement telephone number having an area code from a
                    geographic region the same as a geographic region of an area code
14                  of the telephone number of the call target

15   (*See* Dkt. No. 110, Ex. B, p. 13.)

17                  The Asserted Claims are additionally invalid under 35 U.S.C.
                    § 112(2) because the following claim terms are indefinite: having an
18                  area code from a geographic region the same as a geographic region
                    of an area code of the telephone number of the call target

20   (*See* Dkt. No. 110, Ex. C, pp. 13–14.)  NobelBiz contends that defendants' invalidity contentions

21   did not set forth with sufficient detail the nature of their present argument.  Specifically, NobelBiz

22   argues that:  (1) defendants did not provide any basis for its indefiniteness argument; (2)

23   defendants did not identify specifically "geographic region" as the source of indefiniteness but

24   rather included a lengthier phrase; (3) identified only two claims containing the term "geographic

25   region" and did not identify any other claims containing the same term, which suggests that

26   defendants did not consider the term itself to be indefinite but rather that the longer phrase

27   specifically identified, construed as a whole, suffered from indefiniteness.

28          NobelBiz argues that for these reasons, defendants cannot now maintain that the term

1   "geographic region" is indefinite.

### 3. Legal Standard on Indefiniteness

3   The Supreme Court in *Nautilus* had occasion to consider the definiteness requirement in 35

4   U.S.C. section 112, and specifically, how much imprecision Section 112(b) tolerates.  The

5   Supreme Court affirmed that definiteness is to be evaluated from the perspective of someone

6   skilled in the relevant art at the time the patent was filed and claims are to be read in light of the

7   patent's specification and prosecution history.  *Nautilus*, 134 S. Ct. at 2128 (citing § 112, ¶ 1

8   (patent's specification "shall contain a written description of the invention, and of the manner and

9   process of making and using it, in such full, clear, concise, and exact terms as to enable *any person*

10  *skilled in the art* to which it pertains, or with which it is most nearly connected, to make and use

11  the same") (further citations omitted)).  The Supreme Court further noted that Section 112 "entails

12  a delicate balance" between competing principles:  on one hand, recognition that language is

13  inherently limiting and that a modicum of uncertainly necessarily accompanies the Patent Act's

14  encouragement of innovation; on the other, the need for patents to provide clear notice to the

15  public of what is claimed such that innovation can occur without an overbearing uncertainty of

16  eventual infringement claims.  *Id*. at 2128–29.  The Supreme Court's ultimate holding recognized

17  the play in the joints necessary to permit reconciliation of these competing positions:

19  > We read § 112, ¶ 2 to require that a patent's claims, viewed in light
20  > of the specification and prosecution history, inform those skilled in
    > the art about the scope of the invention with reasonable certainty.
21  > The definiteness requirement, so understood, mandates clarity, while
    > recognizing that absolute precision is unattainable. The standard we
22  > adopt accords with opinions of this Court stating that "the certainty
    > which the law requires in patents is not greater than is reasonable,
23  > having regard to their subject-matter." *Minerals Separation, Ltd. v.*
    > *Hyde*, 242 U.S. 261, 270, 37 S.Ct. 82, 61 L.Ed. 286 (1916). See also
24  > *United Carbon*, 317 U.S., at 236, 63 S.Ct. 165 ("claims must be
    > reasonably clear-cut"); *Markman*, 517 U.S., at 389, 116 S.Ct. 1384
25  > (claim construction calls for "the necessarily sophisticated analysis
    > of the whole document," and may turn on evaluations of expert
26  > testimony).

27  *Nautilus*, 134 S. Ct. at 2129-30. The Supreme Court further elaborated that:

United States District Court
Northern District of California

12

> It cannot be sufficient that a court can ascribe *some* meaning to a patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters *post hoc*. To tolerate imprecision just short of that rendering a claim "insolubly ambiguous" would diminish the definiteness requirement's public-notice function and foster the innovation-discouraging "zone of uncertainty," *United Carbon*, 317 U.S., at 236, 63 S.Ct. 165, against which this Court has warned.

*Nautilus*, 134 S. Ct. at 2130.

In light of *Nautilus*, the Federal Circuit has clarified that claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014) (citing *Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 65–66 (1923) ("finding 'substantial pitch' sufficiently definite because one skilled in the art 'had no difficulty . . . in determining what was the substantial pitch needed' to practice the invention")). Indeed, "absolute precision" in claim language is "unattainable." *Id.* (citing *Nautilus*, 134 S. Ct. at 2129; *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010) ("holding that the claim phrase 'not interfering substantially' was not indefinite even though the construction 'define[d] the term without reference to a precise numerical measurement'"); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.")).

Nonetheless, the Federal Circuit has explained that "[t]he scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). Rather, "[s]ome objective standard must be provided in order to allow the public to determine the scope of the claimed invention." *Id.*

### 4.  Applicable Patent Local Rules

The Patent Rules are designed to "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *DCG Sys. v. Checkpoint Technologies, LLC*, No. 11–03792, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (internal citations and quotation omitted). The invalidity contention disclosure

1   requirements exist "to further the goal of full and timely discovery and provide all parties with

2   adequate notice and information with which to litigate their cases." *Fresenius Medical Care

3   Holdings, Inc. v. Baxter Intern., Inc.*, 2006 WL 1329997 at *4 (N.D. Cal. 2006) (citations

4   omitted).  Accordingly, the rules "require parties to crystallize their theories of the case early in

5   litigation and to adhere to those theories once they have been disclosed."  *O2 Micro Int'l Ltd. v.*

6   *Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n. 12 (Fed. Cir. 2006).  Any invalidity theories

7   not disclosed pursuant to Local Rule 3–3 are barred, accordingly, from presentation at trial

8   (whether through expert opinion testimony or otherwise).  *Avago Techs. Gen. IP PTE Ltd. v. Elan*

9   *Microelectronics Corp.*, No. C04-05385 JW HRL, 2007 WL 2103896 (N.D. Cal. Jul. 20, 2007);

10  *aff'd* 2007 WL 2433386 at *1 (N.D. Cal. Aug. 22, 2007).[4]

11

12      [4] "Although federal courts are generally lenient in allowing parties to amend pleadings,
    such is not the case with amending preliminary infringement contentions."  *See Berger v.*

13  *Rossignol Ski Co., Inc.*, No. 05-02522, 2006 WL 1095914, at *2 (N.D. Cal. Apr. 25, 2006)
    (internal citation omitted).  Patent Local Rule 3–6 allows a party to amend its infringement

14  contentions only upon a showing of good cause:

15      Amendment of the Infringement Contentions or the Invalidity

16      Contentions may be made only by order of the Court upon a timely
        showing of good cause.  Non-exhaustive examples of circumstances

17      that may, absent undue prejudice to the non-moving party, support a
        finding of good cause include:

18

19      (a) A claim construction by the Court different from that proposed
            by the party seeking amendment;

20

21      (b) Recent discovery of material, prior art despite earlier diligent
            search; and

22

23      (c) Recent discovery of nonpublic information about the Accused
            Instrumentality which was not discovered, despite diligent
            efforts, before the service of the Infringement Contentions.

24

25  Patent L.R. 3–6.  The moving party has the burden of demonstrating good cause.  *O2 Micro Int'l*
    *Ltd.*, 467 F.3d at 1366.  The inquiry is two-fold: (1) whether the moving party was diligent in

26  amending its contentions; and (2) whether the non-moving party would suffer prejudice if the
    motion to amend were granted.  *Barco N.V. v. Tech. Properties Ltd.*, No. 08–cv–05398, 2011 WL

27  3957390, at *1 (N.D. Cal. Sept. 7, 2011).

28

United States District Court
Northern District of California

**5. Discussion**

The Court notes first that defendants' infringement contentions and disclosures did not identify with the requisite specificity the substance of their current argument. Rather, defendants' invalidity contention concerning indefiniteness consisted of the following:

> The Asserted Claims are additionally invalid under 35 U.S.C. § 112(2) because the following claim terms are indefinite: the selected replacement telephone number having an area code from a geographic region the same as a geographic region of an area code of the telephone number of the call target

(*See* Dkt. No. 110, Ex. B, p. 13.)

> The Asserted Claims are additionally invalid under 35 U.S.C. § 112(2) because the following claim terms are indefinite: having an area code from a geographic region the same as a geographic region of an area code of the telephone number of the call target

(*See* Dkt. No. 110, Ex. C, pp. 13–14.) As shown, defendants did not identify the term "geographic region" as the source of indefiniteness, but rather included the entirety of a lengthier phrase. Moreover, the identification of that phrase in its entirety as invalid for indefiniteness undermines defendants' current position that plaintiffs were on notice that the term "geographic region," on its own, suffered from indefiniteness. Although the term "geographic region" presents in multiple claims, Defendants identified only *two* phrases containing the term. This can suggest only that defendants did not consider the term "geographic region" itself to be indefinite. Instead, it strongly suggests that defendants viewed the whole of the longer phrase as suffering from indefiniteness. For these reasons, the Court finds that defendants have failed to comply with the Patent Local Rules, and their indefiniteness argument was not properly raised.[5]

Nonetheless, the Court finds that the term "geographic region," viewed in light of the patents' specifications, is reasonably definite insofar as it informs those skilled in the art about the

---

[5] Defendants' cursory incorporation by reference of invalidity contentions from litigation in the Eastern District of Texas likewise does not meet the standard required for invalidity contentions under the Patent Local Rules.

scope of the invention with reasonable certainty.  In reaching the conclusion that the term "geographic region" is not invalid for indefiniteness, the Court finds more persuasive the reasoning offered by the Eastern District of Texas.  (Dkt. No. 110–1, Exs. A; D; Dkt. No. 121, Exs. A, pp. 8–9; B, pp. 8–9.)  The Court therefore tentatively adopts the construction provided by that court, which held that "geographic region" shall mean: "An area bounded by one or more area codes selected to reduce or eliminate the payment of long distance toll charges in the event that the call target dials the callback number."

However, as the Court has not had the benefit of fulsome briefing as to that construction, the Court declines to adopt the Texas court's construction definitively.[6]  Summary judgment will provide the parties an opportunity to brief the relative merits of the construction offered and its impact on each of the claims at issue.

**B.  "Outbound Call"**

| TERM | Plaintiff | Defendants |
|---|---|---|
| **outbound call** | Preamble not limiting so no construction is required<br><br>Plain and ordinary meaning applies, as would be understood by a person of ordinary skill in the art | A call that is headed away from the caller toward the called party |

The disputed term "outbound call" appears in the preamble of claim 1 of the '122 patent and '399 patents (claims 1 and 7); it also appears in the claim body of the '399 patent (claims 1, 7, and 18).  ('122 pat., col. 5:4–5; '399 pat., col. 5:5–6; 40–41.)

**1.  The Parties' Constructions**

The dispute here centers on whether the term "outbound call" denotes a pre-existing call, such that the patent teaches that call must both exist and be "outbound."  Defendants urge that the

---

[6] Plaintiff formally adopted the construction on September 16, 2014, after claim construction briefing and Markman hearing had concluded. (Case No. 13-cv-1773, Dkt. No. 112; Case No. 13-cv-1846, Dkt. No. 104.)

proper construction of the term "outbound call" must reflect that the call being processed is a telephone call that has already been originated and bound for the call recipient.  Defendants argue that the patents at issue here disclose systems that operate only on outbound calls; these patents do not disclose systems that operate on calls before they are outbound.  Plaintiff essentially argues that this construction is too narrow, but declines to offer a competing definition and maintains that the plain and ordinary meaning should control.  Rather than propose a definition, plaintiffs allege that defendants' proposed construction violate several canons of claim construction.

### 2.  Discussion

"The purpose of claim construction is to 'determine the meaning and scope of the patent claims asserted to be infringed.'"  *O2 Micro*, 521 F.3d at 1360.  The parties' dispute revolves around whether the scope of the patents is limited to claiming a method that operates on a call that is already extant.

Although the phrase "outbound call" is a common term easily understood by a jury, this dispute over the scope of the asserted claim is a question of law, and the Court must resolve the question of scope.  *See O2 Micro*, 521 F.3d at 1361 ("In deciding that [the term needed no construction] because the term has a 'well-understood definition,'" the district court failed to resolve the parties' dispute because the parties disputed not the *meaning* of the words themselves, but the *scope* that should be encompassed by this claim language.").  Thus, plaintiffs' insistence that no construction is required does not persuade.  At the same time, however, Defendants' proposed construction proves too limiting.  Of primary concern is that defendants' proposed construction adds terms not found in the specification and not included in the claims themselves, specifically, "headed away" and "called party."  The Court finds defendants' proffered addition of such limitations based nowhere in the specification or other intrinsic evidence fatal to its proposed construction.

Having considered the intrinsic evidence and for the reasons set forth below, the Court construes the term to mean "a call placed by an originator to a target."  Importantly, this construction provides that the subject call be already extant such that the claimed systems and methods can operate upon it.

United States District Court
Northern District of California

1    The Court first looks to the usage of the subject term in the claims themselves.

2  Specifically what is claimed is "a system for handling an outbound call from a call originator to a

3  call target, the system comprising [. . .] an information processor controlled by the call originator

4  and configured to [. . .] set caller identification data of the **outbound call** to the selected telephone

5  number; and (d) transmit the caller identification data to the call target in connection with the

6  **outbound call**." ('399 pat., col. 5:5–24 (emphases supplied); *see also* '122 pat., col. 5:4–5.)  What

7  is further claimed is "a computer for handling an **outbound call** from a call originator to a call

8  target, the computer comprising: [. . .] code for transmitting the caller identification data to the call

9  target in connection with the **outbound call**." ('399 pat., col. 5:40–41; 61–62.)  Thus, the

10  straightforward reading of the claim demonstrates that what is claimed is a system, computer, and

11  method that operates on the subject outbound call.  Moreover, the inclusion of the term

12  "outbound," construed according to its ordinary meaning, provides further definition to the subject

13  call:  the call is of the nature of one that directed *from* a caller *to* a recipient.

14    The figures of the patent need not be relied on to reach this conclusion, but they support it.

15  The Court recognizes that the figures merely represent possible embodiments of the patent and

16  does not intend to have this order import limitations from the figures into the patent claims

17  themselves.  *See Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir.

18  2008); *Playtex Products, Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907–08 (Fed. Cir. 2005).

19  The patents-in-suit refer to the outbound call as occurring on phone lines 110 and 120 after having

20  been transmitted by the originator.  (*See e.g.*, '122 pat., col. 2:18–21, referring to Fig. 2

21  ("Information, such as Target 140 telephone number, may be transmitted from Originator 100 to

22  Carrier Network 130 via physical/virtual connection 110 (e.g. phone line, voice T1, voice DS3)

23  *for an outbound call*.") (emphasis supplied)).  "Originator 100 may transmit Target Identifying

24  Information, including Target 140 telephone number and other information via physical/virtual

25  connection 110 to Carrier Network 130 *for outbound calls*." ('122 pat., col. 2:36–39) (emphasis

26  supplied).  A straightforward reading of the patents-in-suit reveals that those patents teach that the

27  system, computer, and method claimed operate on already extant calls transmitted from an

28  originator to a target, and the figure discussed herein supports that construction.  Thus, the

1   existence of the outbound call, "a call placed from a call originator to a target," is a predicate for

2   the operation of the claimed system, method, and computer.

3   Plaintiff's reliance on the intrinsic evidence showing the claimed systems and methods

4   may operate in the call originator's own PBX, cell, or VoIP phone does not compel a different

5   conclusion.  (*E.g.*, '122 pat., col. 2:58–62; '399 pat., (same).)  Plaintiffs provide no argument that

6   anything inherent to a PBX system—even if that PBX system is the originator's—would preclude

7   the teaching that there exist a "call placed by an originator to a target" upon which the claimed

8   "system and method may operate." (*See* Dkt. No. 112 at 6–8.)

9   The Court's construction, which rests upon the ordinary meaning of the term "outbound

10  call" as used in the patents, is supported by reference to the specification, is consistent with the

11  patent's claims, and permits the public to ascertain the meaning of "outbound call" as used in the

12  patent.  Thus, "outbound call" shall be construed as "a call placed by an originator to a target."

13  **C.   "Replacement Telephone Number"**

| TERM | Plaintiff | Defendants |
|---|---|---|
| **replacement telephone number** | Plain and ordinary meaning applies, as would be understood by a person of ordinary skill in the art | A telephone number that is put in the place of the originator's telephone number |

20  The phrase "replacement telephone number" appears in claims 1, 6, and 16 of the '122

21  patent.   ('122 pat., col. 5:11–19; 44–52; 6:27–35).

22  Defendants contend that a "replacement telephone number" is the telephone number that is

23  put in the place of the originator's telephone number.  They contend that the term "replace" means

24  "re" (again) "place" and that one cannot replace something that never existed.  Defendants

25  maintain that the claims also connote that what must be replaced is a telephone number, *e.g.*, an

26  original, preexisting number.  In opposition, Plaintiffs again argue that plain and ordinary meaning

27  applies and decline to offer a competing construction.

28  The core dispute appears to concern whether the term "replacement telephone number"

United States District Court
Northern District of California

1    requires that there have existed an original number that was or is replaced.  Specifically,

2    defendants urge that the language of the patents teach a system that processes an outbound

3    telephone call to create a "modified caller identification" that is transmitted to the call target.  This

4    modification necessarily changes the first, existing telephone number in the caller identification of

5    the outbound call to a second "replacement telephone number."  Thus, there must have been a

6    predicate, original number to replace.

7         In resolving the question of scope, the Court is persuaded that the term "replacement

8    telephone number," construed according to its plain and ordinary meaning in light of the context

9    in which it is used in the '122 patent, carries with it the requirement that there first be an

10   originating telephone number; the "replacement telephone number" is a telephone number that

11   was or is in fact substituted for the originating caller identification data.  *See O2 Micro*, 521 F.3d

12   at 1361.  Claim terms must be construed consistent with the context of the surrounding words of

13   the claim in which they appear.  *See Brookhill–Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d

14   1294, 1299 (Fed. Cir. 2003).  Moreover, a word used in one claim may elucidate a different

15   claim's use of the same word.  *E.g.*, *Phillips*, 415 F.3d at 1314.

16        In the context of the claims at issue, the '122 patent teaches a system that processes an

17   outbound telephone call to create a "modified caller identification" that is transmitted to the call

18   target.  (*See* '122 pat., col. 5:15–19.)  This modification necessarily changes the first, existing

19   telephone number in the caller identification of the outbound call to a second "replacement

20   telephone number."  (*Id.*)  Accordingly, the language and context of the claims preclude a

21   construction of the term "replacement telephone number" where nothing is or has been replaced.

22   Rather, the "replacement telephone number" must actually replace the original telephone number

23   included in the caller identification data of the telephone call.  (*See id*. at col. 5:4–5; 15–19 ("What

24   is claimed is: A system for processing an outbound call from a call originator to a call target, the

25   system comprising: [. . .] modify caller identification data of the call originator to the selected

26   replacement telephone number [. . .].").)

27        Importantly, despite arguing that the plain and ordinary meaning of the term should control

28   and thus that no construction is necessary, plaintiffs fail to argue that the "plain and ordinary"

United States District Court
Northern District of California

20

United States District Court
Northern District of California

1  meaning of this term differs in any way from the construction provided above.  The Court is

2  skeptical that the term could reasonably have any other meaning, and plaintiffs have provided

3  none.  Plaintiffs' additional arguments do not persuade.  Plaintiffs' argument that the "replacement

4  telephone number" is "selected," not "replaced" (Dkt. No. 112 at 3.) is inapposite and ignores the

5  nature of the term "replacement" entirely.  The construction proposed by defendants does not seek

6  to undo the requirement that a replacement telephone number be "selected," it merely seeks to

7  define what that term "replacement" means in the context of the patent.  A straightforward reading

8  demonstrates that "replacement" naturally modifies the more general noun "telephone number."

9  For "replacement" to be given its ordinary meaning does not "change a noun into a verb" as

10  plaintiffs argue.  (*Id.*)  It merely provides definition to the term.

11  Nonetheless, defendants' proposed construction is too limiting.  Specifically, the Court

12  finds that defendants' inclusion of the clause "put in the place of" adds an additional limitation not

13  found in the term at issue or the related claims.  The reference to a "place" into which a telephone

14  number is "put" carries with it the notion of situs unsupported by a straightforward reading of the

15  claim term and the context in which it is used, and is likely to confuse the jury by suggesting that

16  the patent requires that there be a tangible, physical location.  Likewise, it is not necessary that the

17  term be construed in such a way as to provide for any particular, much less only one, purpose, as

18  defendants proffer (*i.e.*, to be put in the place of the originator's telephone number).  The Court

19  finds that the claims in the patent provide sufficient definition relative to how the claimed system,

20  computer, and method operate on the replacement telephone number.  For this reason, defendants'

21  suggestion that the replacement telephone number be construed as "put in the place of the

22  originator's telephone number" imposes an undue limitation on the claims at issue and construes

23  the term "replacement telephone number" too narrowly.

24  In light of the intrinsic evidence, it is apparent that the "replacement telephone number"

25  term connotes only that it is a telephone number distinct from the originator's telephone number;

26  the term itself does not command any particular usage of that distinct telephone number.  Rather,

27  the balance of the patent claims operate to make use of that distinct telephone number; thus, the

28  construction of this term cannot impose different limitations.  The plain meaning of the term

1   "replacement telephone number," fairly construed, means simply a telephone number that

2   substitutes for another telephone number.  Accordingly, the Court therefore construes the term

3   "replacement telephone number" to mean "a telephone number that substitutes for an original

4   telephone number."

5

6       **D. "modify[ing] caller identification data of the call originator to the selected replacement telephone number"** and **"modified caller identification data of the call originator"**

7

8

| Term | Plaintiff | Defendants |
|---|---|---|
| **modify[ing] caller identification data of the call originator to the selected replacement telephone number** <br><br> and <br><br> **modified caller identification data of the call originator** | Plain and ordinary meaning applies, as would be understood by a person of ordinary skill in the art | Changing the original caller identification assigned to placed call to a caller identification showing the replacement telephone number <br><br> Caller identification that has been changed from the telephone number previously assigned to the caller originator |

18       The phrases "modify[ing] caller identification data of the call originator to the selected

19   replacement telephone number" and "modified caller identification data of the call originator"

20   appear in claims 1, 6, and 16 of the '122 patent.  ('122 pat., col. 5:15–21; 46–54; 6:30–37).

21       Defendants argue that the phrase "modify[ing] caller identification data of the call

22   originator to the selected replacement telephone number" should be construed as "changing the

23   original caller ID assigned to the placed call to a caller identification showing the replacement

24   telephone number."  (Dkt. No. 111 at 9.)  NobelBiz again asserts that "the plain and ordinary

25   meaning of the term" applies and thus the term needs no construction.  (Dkt. No. 112 at 6.)

26       Again, the focus of the parties' proffered constructions appear to turn on whether the term

27   should be construed to mean that the "caller identification data" must be "modified" or whether

28   such caller identification may simply be created in the first instance for transmittal to a target.  In

United States District Court
Northern District of California

1  this way, defendants' arguments concerning the "modify" claim element complement their

2  construction for "replacement telephone number."  Essentially, defendants maintain that there first

3  must be caller identification data of the call originator that is then "modified" "to the selected

4  replacement telephone number."

5      The Court notes that although NobelBiz argues that plain and ordinary meaning should

6  apply, it fails to identify what that meaning is or explain why "modify" as used in the patent

7  claims does not mean "change" under a plain and ordinary meaning standard.  The Court finds that

8  NobelBiz has failed to argue persuasively that the term "modify" has any particularized meaning

9  in the context of the patent, or that the plain and ordinary meaning is anything other than

10  "change."  Indeed, the Court finds that the claim language itself makes clear that the term

11  "modify" as used in the claims means "change."  The claims refer to "modified caller

12  identification data."  ('122 pat., col. 5:20–21; 53–54; 6:36–37.)  Thus, there must have been some

13  unmodified caller identification data that was modified; this implicitly requires there to have been

14  a change.  In fact, the patent claims make clear what the caller identification data is to be changed

15  to:  "the selected replacement telephone number."  (*Id*. at col. 5:15–16.)  Accordingly, contrary to

16  NobelBiz's contention, a construction including the term "changing" or "change" is not unduly

17  restrictive—it is in accord with, and arguably compelled by, the claim language itself.

18      The specification further supports the notion that the term at issue, "modify," carries with

19  it the notion of change.  For example,

20

21      Based on this match in column B, the system may **modify** the
communication to send an outbound Caller ID to Target 140 having

22      the contents of entry 3 in column C, here 212-333-0001. Therefore,
Target 140 may then make a return call to a local telephone number

23      212-333-0001 at a local area code (212), rather than potentially
incurring long distance charges by making a return call to Originator

24      100 at a non-local number 954-444-0001 at a non-local area code
(954).

25

26  ('122 pat., col. 4:20–27 [emphasis supplied]; *see also* Figure 5.)  The word "modify" as used in the

27  above portion of the specification refers to the act of changing Originator 100's "non-local number

28  954-444-0001" to the replacement telephone number 212-333-0001.  Construing the term

23

"modify" as "change" also comports with the purpose of the patent, which teaches a system, method, and process for enabling the target to return a call to a local number and avoid long distance charges that it would have received for returning the call to the Originator's actual number.  (*See* '122 pat., col. 4:20–27.)

Given the above discussion, the Court finds that the term "modify" shall be construed to mean "change."  Because this necessarily means that there is first caller identification data that is changed, this construction conclusively resolves the parties' dispute and consideration of the balance of defendants' proposed construction is not necessary.  However, the Court finds that defendants' proposed construction improperly inserts other terms not found in the specification, including "original caller identification"; "assigned to placed call"; and "the telephone number previously assigned to the caller originator."  As defendants themselves appear to concede, the claim term they seek to construe makes clear what that change must be (Dkt. No. 111 at 9); the Court need not provide construction where the claim language is not subject to dispute.  Given that the claim makes sufficiently clear what the change must be ("to the selected replacement number"), and in light of the construction of "replacement telephone number" provided above, the Court declines to impose the entirety of defendants' preferred construction.

The terms "modify[ing] caller identification data of the call originator to the selected replacement telephone number" and "modified caller identification data of the call originator" shall mean "changing caller identification data of the call originator to the selected replacement telephone number" and "changed caller identification data of the call originator."

**E.  "Telephone number having one of two or more area codes"**

| TERM | Plaintiff | Defendants |
|---|---|---|
| **Telephone number having one of two or more area codes** | Plain and ordinary meaning applies, as would be understood by a person of ordinary skill in the art | A telephone number associated with two or more area codes, where one of the area codes is selected for use with a particular call |

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The relevant language in claims 1, 7, and 18 of the '399 patent recites, "a database storing a plurality of outgoing telephone numbers, each outgoing telephone number having one of two or more area codes." ('399 pat., col. 5:7–9; 49–51; 6:31–33).

Defendants argue that the Court should construe the claim limitation "telephone number having one of two or more area codes" to mean "telephone number associated with two or more area codes, where one of the area codes is selected for use with a particular call."  Defendants maintain that in order for the phrase "telephone number having one of two or more area codes" to have meaning, the same number must be capable of having two or more area codes.  (Dkt. No. 111 at 16.)  Plaintiffs counter that plain and ordinary meaning should control and thus, that the term needs no construction.  (Dkt. No. 110 at 9–10.)

The Court is not convinced that in order for the term "telephone number having one of two or more area codes" to have meaning, defendants' construction need be adopted.  The core of defendants' position is that to hold otherwise would mean that every telephone number would meet the claim limitation.  (*See* Dkt. No. 111 at 16.)  But defendants do not explain clearly how that would be, and the Court is not convinced that the claim language, construed according to its plain and ordinary meaning, actually works such superfluity.  The language of the claim itself is clear—what is claimed is a system, computer, and method comprising, among other things, a database storing the subject telephone numbers.  The claim then provides limitations concerning the nature of the telephone numbers stored in said database: "each outgoing telephone number having one of two or more area codes."  Thus, the claim limitation bears on the nature of the database claimed—such database stores outgoing telephone numbers; each of those numbers has one of two or more area codes.  The Court finds the plain language of the claim to have meaning: the database contemplated simply cannot store a plurality of outgoing telephone numbers having less than two possible area codes.

Accordingly, defendants' arguments in support of their proposed construction do not persuade, and they have raised no dispute about the scope of the claim term.  The Court concludes that the term "telephone number having one of two or more area codes" is not ambiguous and will

be easily understood by a jury.  Thus, the Court construes the term "telephone number having one of two or more area codes" to give it its plain and ordinary meaning.

## VI.    CONCLUSION

Based on the foregoing, the Court provides the following claim constructions:

| TERM | CONSTRUCTION |
|---|---|
| **geographic region** | An area bounded by one or more area codes selected to reduce or eliminate the payment of long distance toll charges in the event that the call target dials the callback number<br><br>(*tentative construction) |
| **outbound call** | A call placed by an originator to a target |
| **replacement telephone number** | A telephone number that substitutes for an original telephone number |
| **modify[ing] caller identification data of the call originator to the selected replacement telephone number**<br><br>and<br><br>**modified caller identification data of the call originator** | Changing caller identification data of the call originator to the selected replacement telephone number<br><br>and<br><br>Changed caller identification data of the call originator |
| **telephone number having one of two or more area codes** | Plain and ordinary meaning |

**IT IS SO ORDERED.**

Dated: January 16, 2015

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT

United States District Court
Northern District of California